**In the Matter of Evelyn Martin HAZEN, Debtor.**

**Thomas PETERSON, Plaintiff,**

**v.**

**Evelyn Martin HAZEN, Defendant.**

**Bankruptcy No. 82–2254.
Adv. No. 83–033.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 21, 1983.

Norman Bie, Jr., Largo, Fla., for plaintiff.

Stephen G. Beneke, Clearwater, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the immediate matter under consideration is the right of the Debtor, Evelyn Martin Hazen, to obtain a general discharge pursuant to 11 U.S.C. § 727. The Debtor's right to discharge is challenged by Thomas Peterson and Lucille Peterson, his wife, who are the sole scheduled creditors of the Debtor. The Petersons filed a Complaint Objecting to Discharge, and although the Complaint is not clearly articulated, it appears that the Petersons seek the entry of a final judgment denying a discharge on the grounds that the Debtor (1) within one year of filing her petition for relief, transferred certain assets with intent to hinder, delay or defeat the claims of creditors; and (2) concealed the existence of the assets by placing them in a trust in which she is the life beneficiary. The Petersons contend that both acts were performed for the purpose and with the intent to hinder, delay or defeat the just claims of creditors. The allegations are directed to two separate transactions by the Debtor. The first transaction involves the sale of certain shares of publicly traded stock which were held in a brokerage house margin account. The second transaction involves the creation of a trust on July 9, 1981, in which the Debtor is both the settlor and the life beneficiary. The Debtor did not disclose the life estate in the schedules accompanying her Petition for Relief.

The Court heard testimony of the Debtor, argument of counsel, considered the record and finds as follows:

On April 16, 1980, Carl M. Hazen, the Debtor's spouse, died and the Debtor was appointed by the Circuit Court of Pinellas County, Florida to act as personal representative of her deceased husband's estate. On July 14, 1980, the Debtor in her capacity as personal representative, filed an inventory of the estate, listing as estate assets real property valued at $5,000, a mortgage note receivable in the amount of $54,000, personal effects valued at $5,000 and numerous shares of publicly traded stock valued at $84,453 (Pl's Exh. # 1). It further appears that the Debtor filed a Petition in the Circuit Court seeking a determination of her statutory elective share, and on June 1, 1982, the Court entered an order establishing her entitlement in the amount of $50,500.80 which sum was to be satisfied by the transfer of 1,000 shares of Texaco, Inc.; 200 shares of AT & T and 550.66 shares of Sears, Roebuck & Co. The Court directed the personal representative to distribute the designated shares to the Debtor as surviving spouse, on or before June 10, 1982.

The record reveals that while acting as personal representative of the decedent's estate, the Debtor sought to increase the value of the estate and engaged in extensive margin trading by selling "naked options." In short, the Debtor sold the right to buy a specified stock from her at a price certain, even though she owned none of the stock with which to honor the commitments. The Debtor speculated that the cost per share of the stock would fall below the option price, that the purchasers of the options would not exercise their options, but would let them expire and that the estate would recognize a substantial profit as the result.

As fate would have it, the price of the stocks markedly increased and the options were called. In accordance with the standard practice and pursuant to the brokerage contract executed between an investor who trades on margin and the brokerage house, the brokerage house automatically liquidated the stocks in her portfolio; that is, Texaco, Sears and AT & T shares, in order to purchase the stock to cover the options as they were being exercised. It is evident that the cost to purchase was higher than the price at which the Debtor sold the options. There is no doubt that the liquidation of the stock was solely the act of the brokerage house and was not done at

the direction or with the consent of the Debtor, but was an involuntary transfer.

Based on these facts, the Court is satisfied that the transfer of the stock, which represented the Debtor's share of the estate, even if actually completed within one year of bankruptcy, was done involuntarily and certainly without intent to hinder, delay or defraud creditors. Therefore, the allegation that the Debtor voluntarily and intentionally transferred the stock in order to frustrate the claims of creditors is without merit.

The second transaction involves the creation of a trust by the Debtor, as settlor, on July 9, 1981. The Trust purports to be a spendthrift trust and the Debtor's son, Carl M. Hazen III, was appointed by the Debtor to be the trustee. The Debtor retained a life estate in "the entire net proceeds from the income of the Trust Fund and capital gains distributions from investment trusts . . ." The trust further provided that the trustee is directed to "make payments from the principal Trust Fund to or for the benefit of the Grantor in such sums and at such times as the Grantor may request from time to time." (Debtor's Exh. # 1) The Trust is funded by a mortgage and note in the principal amount of $92,000, a mortgage and note in the principal amount of $52,000 and the title to a condominium which serves as the primary residence of the Debtor. It is unclear whether these assets constitute the entire corpus of the trust and when the assets were actually transferred into the trust.

As noted earlier, the Trust document contains a "spendthrift" provision (Article IV, Debtors' Exh. # 1), however, it also includes a provision in Article XIV as follows:

AMENDMENT AND REVOCATION: This trust is subject to amendment, modification and/or revocation by the Grantor, in writing, from time to time.

It should be pointed out that on December 1, 1980, prior to the creation of the trust, the Petersons filed an action on a promissory note against the Debtor seeking a judgment in the amount of $39,163.39. The action was filed in the Circuit Court for Pinellas County, Florida and the Debtor was named as one of four defendants. On July 30, 1981, approximately three weeks after creating the trust, the Debtor filed an answer, affirmative defenses, a counterclaim and a crossclaim. On October 26, 1982, when the Debtor filed the Petition for Relief, the lawsuit filed by the Petersons in Circuit Court was still pending.

It is undisputed that the Debtor failed to reveal the existence of the life estate on her schedules of assets and liabilities attached to the Petition for Relief filed on October 26, 1982. It is the Debtor's position that because the trust purports to be a spendthrift trust, it is not property of the bankruptcy estate and not subject to disclosure requirements.

The Petersons challenge the Debtor's right to discharge on the ground that the Debtor concealed property within one year of bankruptcy with intent to hinder, delay or defraud creditors. Bankruptcy Code § 727(a) provides in pertinent part:

§ 727. Discharge

(a) the Court shall grant the debtor a discharge, unless—

(1) the debtor is not an individual;

(2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated or *concealed* . . .

(A) property of the debtor within one year before the date of the filing of the petition;

(B) property of the estate, after the date of filing the petition. (emphasis supplied)

11 U.S.C. § 727(a)(1) and (2).

■ Pursuant to Bankruptcy Rule 4005, the party objecting to the discharge bears the burden of establishing that the Debtor concealed the property with the intent to hinder, delay or defraud a creditor within one year of the filing of the petition for relief.

■ Based on the facts of this case, the Court is satisfied that the Debtor established the purported "spendthrift" trust in

order to remove certain assets from the reach of her creditors. There is absolutely no doubt that at the time that the Debtor created the trust, she was already sued by the Plaintiff in the action pending in the Circuit Court for Pinellas County for several months. Shortly after the trust was established, the Debtor filed an answer, affirmative defenses, a counterclaim and a crossclaim. Certainly, the Debtor was not unmindful of the Petersons' attempt to obtain a judgment for nonpayment of a promissory note in the amount of $39,163.39. It is also noteworthy that the trust, created to protect assets from the reach of creditors, not only provided the Debtor with a life estate, but also reserved to her the right to revoke the trust upon written request. There is no doubt, and this Court has earlier determined in an adversary proceeding also pending in this case, that the trust was merely a sham created to remove assets from the reach of creditors. Thus, it is clear that her unrestricted right to control the trust negates the contention that this was indeed a bona fide spendthrift trust.

In addition to the element of intent, it is also incumbent upon the Petersons to establish that the Debtor committed the acts which form the basis of the objection within one year of the date of the Petition. It is generally recognized, however, that concealment is a continuing act and although the act of concealment might have commenced prior to the one year period, it continued into the one year preceding the commencement of the case and that will satisfy the requirement of § 727(a)(2) of the Bankruptcy Code. 4 *Collier on Bankruptcy,* ¶ 727.02[2] (15th ed. 1983). In this case, the trust was created outside the one year period and there was no evidence presented at trial which would support a finding that any of the assets were transferred into the trust within the statutory period. However, it is significant that upon filing the Petition for Relief, the schedules of assets and liabilities on October 26, 1982, the Debtor failed to disclose her interest in the trust.

Based on the foregoing, this Court is satisfied that Evelyn Martin Hazen willfully and with intent to defraud her creditors concealed assets by placing them in trust and failing to disclose a life interest in the trust. Accordingly, the Debtor is not entitled to a general discharge pursuant to § 727(a)(3) of the Bankruptcy Court.

A separate final judgment will be entered in accordance with the foregoing.