In re Ralph I. LAZAR, Debtor.

YACHT INVESTORS, INC., Burns Craft, N.E. Corp., and Burns Craft, S.E. Corp., Plaintiffs,

v.

Ralph I. LAZAR, Defendant.

Joy LAZAR, Plaintiff,

v.

Ralph I. LAZAR, Defendant.

Daniel L. BAKST, as Trustee, Plaintiff,

v.

ARBET ENTERPRISES, INC., Betty Lazar, Arlene Lazar Nathanson, Jean Israel, Barnett Bank of South Florida, N.A. and American Savings and Loan Association of South Florida, Defendants.

Bankruptcy No. 86–03142.
Adv. Nos. 86–0746–BKC–SMW–A, 87–0004–BKC–SMW–A and 87–0157–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Jan. 8, 1988.

Leon Oldak, Colodny, Fass & Talenfeld, P.A., North Miami, Fla., for Yacht Investors, Inc., Burns Craft N.E. Corp., and Burns Craft S.E. Corp.

John L. Britton, Britton and Kantner P.A., Fort Lauderdale, Fla., for trustee.

Martin L. Sandler, Wood Lucksinger Epstein, Miami, Fla., for Joy Lazar.

Herbert Stettin, Miami, Fla., for Ralph I. Lazar, Arbet Enterprises, Inc., Betty Lazar, Arlene Lazar Nathanson, Jean Israel, Barnett Bank of South Florida, N.A. and American Sav. and Loan Ass'n of South Florida.

Alan Rosenthal, North Miami Beach, Fla., for Ralph I. Lazar, Arbet Enterprises, Inc., Betty Lazar, Arlene Lazar Nathanson, Jean Israel, Barnett Bank of South Florida, N.A. and American Sav. and Loan Ass'n of South Florida.

Daniel L. Bakst, West Palm Beach, Fla., trustee.

Neil J. Berman, Broad & Cassel, Miami, Fla., for American Sav. and Loan Ass'n.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come on to be heard upon the trustee's claim for fraudulent transfer and turnover of certain assets pursuant to 11 U.S.C., § 544(b) and further upon the complaints filed by the creditors, Yacht Investors, Inc., Burns Craft S.E. Corp., and Burns Craft N.E. Corp. ("the creditors") and the debtor's spouse seeking to prevent the debtor's discharge in bankruptcy pursuant to 11 U.S.C. § 727(a), and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses,

considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

In February of 1980, the creditors initiated an action in New York against the debtor and others seeking to recover damages incurred by the creditors when the defendants allegedly conspired to and did interfere with the business relationship between the creditors and Burns Manufacturing Co., a manufacturer of boats. Prior to the defendants' alleged tortious interference, the creditors had enjoyed a lucrative business as the exclusive regional distributors of the vessels produced by Burns Craft.

On September 29, 1980, shortly after the New York litigation was initiated, the debtor appeared in New York and submitted to a deposition scheduled by counsel for the creditors. On October 20, 1980, just three weeks later and one week before the debtor's deposition was taken for a second time, the debtor made the first of several transfers of assets to his daughters, Arlene Lazar Nathanson and Betty Lazar ("Arlene" and "Betty" respectively). On said date, the debtor executed an Assignment of Note and Mortgage to his daughters, thereby transferring to them his entire interest in a certain Note and Mortgage on a warehouse located in Dade County, Florida.

On November 7, 1983, the subject Note and Mortgage were satisfied and the sum of $179,992.76 was paid to the debtor's daughters, Arlene and Betty. The funds were deposited in the Barnett Bank of South Florida in certificates of deposit titled in the names of the daughters. The funds remained at the Barnett Bank until February 14, 1984, when they were used to purchase a 60 foot Hatteras yacht named the Arbet ("Arbet I").

The total purchase price of the Arbet I, $317,500.00, was derived from three sources: the funds which represented the payoff of the Note and Mortgage; the personal funds of the debtor, and $104,000.00 which was transferred from the debtor's solely owned pension trust fund to his daughter, Arlene, several days prior to the purchase of the Arbet I. Title to the Arbet I was held by Arbet Enterprises, Inc., a closely held corporation in which Arlene and Betty were the sole shareholders.

The Arbet I was sold on June 4, 1984 for the sum of $400,000.00. Approximately one-half of these funds was used to purchase a 60 foot Chris Craft yacht on October 26, 1984, which yacht was also named the Arbet ("Arbet II"). Title to this yacht was held, and presently is held, in the name of Arbet Enterprises, Inc.

The remainder of the $400,000.00 garnered upon the sale of the Arbet I was deposited in certificates of deposit at the Barnett Bank in the names of Betty and Arlene. These funds were used by the debtor and his daughters for their support until the remaining $40,000.00 was wrongfully removed by defendant, Betty Lazar, during the pendency of this action in contravention of court order. Betty Lazar did not personally appear at the trial of this case after she absconded with the aforesaid funds, but she was represented by counsel and the trial proceeded against her despite her absence.

The New York litigation continued until November of 1985 when the creditors obtained a judgment against the debtor in the amount of two million dollars. Shortly thereafter, the creditors sought to execute upon their judgment, and the debtor filed the instant bankruptcy petition.

Both the Arbet I and Arbet II were used by the debtor as his place of residence and for his personal benefit and enjoyment. Both yachts were docked primarily at the Turnberry Isle Yacht Club. Moreover, Arbet Enterprises, Inc., the titleholder of the yachts, was formed solely for the purpose of taking title to the yachts and was, and remains, wholly controlled by the debtor.

The trustee's complaint alleges that the Arbet II and all funds previously on deposit at the Barnett Bank in the names of the debtor's daughters were fraudulently transferred by the debtor to hinder, delay and defraud the creditors. The trustee's complaint also alleges that Arbet Enterprises, Inc., the titleholder of the Arbet II, is the alter ego of the debtor. This Court

finds that the evidence sufficiently supports these claims.

■ The trustee brings his fraudulent transfer action pursuant to the authority of 11 U.S.C. § 544(b) and Florida's Fraudulent Conveyance Act, § 726.01, Florida Statutes. The transfers of the Note and Mortgage and the Pension Trust funds described above are marked by several of the "badges of fraud" which the Florida courts have identified as factors tending to indicate the presence of a fraudulent transfer. *See In re Total Acquisition Corp.*, 29 B.R. 836 (Bkrtcy.S.D.Fla.1983). Specifically, the subject transfers were made to family members for no consideration, and after the transfers the debtor retained full control over, and derived the primary benefit from, the use of the funds and the assets subsequently purchased therewith.

The Court finds that the debtor's intent in making the aforesaid transfers, and the legal effect of said transfers, was to hinder, delay and defraud the creditors. Under these circumstances, the trustee has sufficiently proven his claim. *See In re Flanzbaum*, 10 B.R. 420 (Bkrtcy.S.D.Fla. 1981).

The debtor and the defendants argue that the subject transfers were bona fide in that they represented repayment of loans. The Court finds that the evidence fails to establish that the transfers were made for such a purpose.

■ The debtor also argues that, under Florida law, the statute of limitations for acts of fraud is four years, which period has expired. *See* § 95.11(3)(j), Florida Statutes (1986). However, the four year limitation period begins to run only from the time when the facts underlying the cause of action were discovered or should have been discovered. *See* § 95.031(2), Florida Statutes. The debtor's conduct, from the time of the subject transfers through and including the trial of this case, has been aimed at concealing the true nature of the subject transfers. The Court finds that the debtor and the defendants failed to establish that, in the exercise of due diligence, the creditors knew or should have known of the subject transfers more than four years prior to the filing of this action.

In light of the totality of the evidence presented, this Court finds that the trustee has proven his claim. The defendant, Arbet Enterprises, Inc., shall turn over the yacht Arbet II to the trustee. Further, the trustee shall recover from the defendant, Betty Lazar, the sum of $40,000.00.

■ As a separate and independent basis for awarding the turnover of the yacht Arbet II to the trustee, this Court finds that the corporation known as Arbet Enterprises, Inc. is the alter ego of the debtor. Arbet Enterprises, Inc. was at all times the mere instrumentality of the debtor, created to aid the debtor in defrauding the creditors and concealing his ownership of both the Arbet I and Arbet II.

■ In addition to the trustee's claim, both the creditors and the debtor's spouse filed independent actions seeking to block the discharge of the debtor. These claims were consolidated for trial with the trustee's claim. The objections to the discharge are mainly premised upon the provisions of 11 U.S.C. § 727(a). In connection with the claimed objections to the debtor's discharge, the Court finds that the debtor, with the intent to hinder, delay and defraud the creditors, did engage in the continuous concealment of his assets during the one year period prior to the filing of the bankruptcy petition, which satisfies the requirements of § 727(a)(2) of the Bankruptcy Code. *See In re Hazen*, 37 B.R. 329 (Bkrtcy.M.D.Fla.1983).

Moreover, the debtor made false oaths and accounts in connection with this case, in violation of § 727(a)(4)(A). Specifically, the debtor failed to list on his schedules his interests in several corporations, bank accounts and powers of attorney. The debtor also made false oaths during his trial testimony in regard to the true nature of the aforesaid transfers and his interest in the yacht Arbet II. The purpose of these false oaths was to prevent the trustee and this Court from learning the debtor's true interests in the yacht Arbet II and the funds maintained at Barnett Bank. The totality of the evidence presented by the trustee,

the creditors and the debtor's spouse in connection with their respective claims serve to support this Court's conclusion that the debtor be denied his discharge in bankruptcy.

The trustee also sought the turnover of an automobile previously owned by the debtor and several bank accounts presently titled in the name of the debtor's sister. The Court finds that the trustee relinquished any claim to the automobile prior to trial. Further, the Court finds that the subject bank accounts were not part of the scheme of fraudulent transfers more fully described in this opinion.

A separate final judgment of even date has been entered in conformity herewith.

## FINAL JUDGMENT

In conformity with the Findings of Fact and Conclusions of Law of even date, it is

ORDERED AND ADJUDGED as follows:

1. That pursuant to 11 U.S.C. § 544(b), the debtor and the defendants, Arbet Enterprises, Inc., Arlene Lazar Nathanson, and Betty Lazar, shall turn over title to, and possession of, the yacht known as Arbet to the trustee free and clear of all liens and encumbrances, together with all equipment which is a part thereof. Further, the debtor and the aforesaid defendants shall execute all necessary documents and do all things necessary to transfer title to the yacht Arbet to the trustee.

2. That the trustee shall recover from the defendant, Betty Lazar, the sum of $40,000.00, which represents the amount previously removed by said defendant from the Barnett Bank, which sum shall bear interest at the rate of twelve percent (12%) per annum from the date hereof.

3. That pursuant to 11 U.S.C. § 727(a), the debtor is denied his discharge in bankruptcy.

4. That the Court reserves jurisdiction to tax costs and attorney's fees.